Filed 3/6/13  P. v. Fields CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>DERRICK FIELDS,<br><br>    Defendant and Appellant. | G045906<br><br>(Super. Ct. No. 11NF1708)<br><br>O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Richard W. Stanford, Jr., Judge.  Affirmed.

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Melissa Mandel and Scott C. Taylor, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted Derrick Fields of two counts of second degree robbery (counts 1 & 2; Pen. Code, §§ 211, 212, subd. (c); all further statutory references are to this code) and street terrorism (count 3; § 186.22, subd. (a)). The jury also found gang and firearm penalty enhancement allegations true on the first two counts under section 186.22, subdivision (b)(1), and section 12022.53 for vicarious use of a gun by a coperpetrator. On appeal, defendant challenges the sufficiency of the evidence to support the firearm enhancement on count 2 involving a store employee who did not see the gun and to support the gang enhancement for conduct he claims he engaged in with gang associates only for personal gain. He also argues the trial court erred by imposing the upper term of five years on count 1 and a consecutive term on the second robbery count. As we explain, these contentions lack merit and we therefore affirm the judgment.

I

FACTUAL AND PROCEDURAL BACKGROUND

Around 11:25 a.m. on May 10, 2011, defendant entered a small storefront mobile phone shop in Anaheim and asked employee Guillermo Millan to charge and reactivate his Kyocera cellular phone. As Millan charged the phone, he noticed defendant kept glancing back toward the store entrance where the other store employee, Luis Mendoza, was mopping in an area cordoned off by caution tape. Two other Black males soon entered, ducked under the caution tape, approached the counter, and one lifted his shirt while pulling out a gun and directed Millan to "look here, look here" at the gun. Millan noticed it appeared to be an older revolver-style gun and when the male ordered him to "get out that money," Millan produced $300 from the cash register and also obeyed the command to empty his pockets, handing over $80.

Defendant doubled back to Mendoza's location and demanded his wallet, which Mendoza treated as a joke until one of the other robbers said, "[T]his guy don't know what is going on yet." Only then did Mendoza look over to Millan, see his hands raised in surrender and, realizing a robbery was underway, Mendoza gave defendant his wallet. Finding it empty, defendant threatened Mendoza, "Okay we'll come get you later."

The gunman ordered Millan to open a display case of cell phones but before he could comply, defendant leaped over the counter, broke the glass bin, and gathered up three special edition Huawei Tapout Ascend cell phones, two laptop computers, and a name brand "True Religion" bag in which defendant deposited the loot. The robbers departed, but defendant left his Kyocera phone, and from store surveillance video and contact with Los Angeles Police Department investigators familiar with defendant and his fellow Eight Trey Gangster Crip accomplices, the police soon arrested defendant. His fingerprints matched those recovered from the glass case in the store, he still had one of the special edition Huawei phones in his possession, and the contacts that had been loaded into the Huawei phone matched those in the Kyocera phone defendant left at the store.

At trial, the prosecution's gang expert testified the Eight Trey gang consisted of more than 500 documented members and originated in South Central Los Angeles, but claimed as its "turf" huge tracts of territory throughout Los Angeles County. The expert noted other gangs viewed Eight Trey with respect as a powerful and violent gang whose primary activities consisted of committing carjackings, robberies, shootings, and murders, and that a robbery committed outside the gang's traditional territory would enhance its reputation by demonstrating its reach. Based on facial and body tattoos and

3

numerous prior police contacts documenting defendant and at least one of his accomplices in the present burglary as Eight Trey members, the expert opined they were current members at the time of the offense, which defendant does not challenge on appeal.

After the jury returned its guilty verdict, the trial court sentenced defendant to a total term of 19 years and four months in prison, consisting of an upper term of five years on count 1, with 10 consecutive years for the firearm enhancement, and an additional consecutive four years and four months on count 2 and its firearm enhancement (consisting of one-third the midterm on count 2 and one-third of the mandatory firearm enhancement term). Defendant now appeals.

II

DISCUSSION

A.   *Substantial Evidence Supports the Gun Use Finding*

Defendant challenges the sufficiency of the evidence to support the firearm enhancement under section 12022.53 on count 2. On appeal, the reviewing court must view the evidence in the light most favorable to the judgment. (*People v. Elliot* (2005) 37 Cal.4th 453, 466.) It is the trier of fact's exclusive province to assess witness credibility and to weigh and resolve conflicts in the evidence. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 330 (*Sanchez* ).) We therefore presume the existence of every fact reasonably inferred from the evidence in support of the judgment. (*People v. Crittenden* (1994) 9 Cal.4th 83, 139.) The test is whether substantial evidence supports the conclusion of the trier of fact, not whether the appellate panel is persuaded the defendant is guilty beyond a reasonable doubt. (*Ibid*.; *People v. Johnson* (1980) 26 Cal.3d 557, 576.) In other words, reversal is not warranted even though the circumstances could be

4

reconciled with a contrary finding. (*People v. Bean* (1988) 46 Cal.3d 919, 932-933 (*Bean*).) Thus, a defendant attacking the sufficiency of the evidence "bears an enormous burden." (*Sanchez*, at p. 330.)

Defendant argues reversal is required because the evidence did not show the victim in count 2, Mendoza, was aware of the coperpetrator's display of a weapon to rob Millan moments earlier, and therefore no evidence showed the requisite use of a gun to rob Mendoza. As courts have consistently explained, however, the "'legislative intent to deter the use of firearms in the commission of the specified felonies requires that "uses" be broadly construed.'" (*People v. Thiessen* (2012) 202 Cal.App.4th 1397, 1404 (*Thiessen*); accord, *People v. Chambers* (1972) 7 Cal.3d 666, 672 (*Chambers*).)

Specifically, section 12022.53 applies to robbery and provides in pertinent part: "Notwithstanding any other provision of law, any person who, in the commission of a felony specified in subdivision (a), personally uses a firearm, shall be punished by an additional and consecutive term of imprisonment in the state prison for 10 years. The firearm need not be operable or loaded for this enhancement to apply." (§ 12022.53, subds. (a)(4) & (b).) The enhancement further applies to *all* principals and not just one personally using the firearm when the underlying offense is committed for the benefit of, at the direction of, or in association with a criminal street gang as provided in section 186.22, subdivision (b), as the jury concluded here. (§ 12022.53, subd. (e)(1).)

Contrary to defendant's suggestion, the victim need not see or otherwise perceive the presence of the gun for the enhancement to apply, provided there is evidence the gun is used in some manner "'*to facilitate the commission of an underlying crime.*'" (*Thiessen*, *supra*, 202 Cal.App.4th at p. 1405, original italics.) Thus, the court in *Thiessen* held that "[e]ven if the shotgun were inoperable and unseen by anyone else, as

5

Thiessen claimed, by pointing it alongside Ramirez as Ramirez aimed a rifle at the intended victim, and pulling the trigger to make a 'click' noise, Thiessen emboldened Ramirez to shoot." (*Id.* at p. 1404.) The victim in *Thiessen* did not hear the "click" noise or otherwise notice the weapon, but the jury reasonably could conclude the defendant used his firearm to facilitate the commission of the crimes by emboldening his coperpetrator. (*Ibid.*) As the Supreme Court explained in *Chambers*, "'Use' means, among other things, 'to carry out a purpose or action by means of,'" or simply to "'make instrumental to an end or process,' and 'to apply to advantage.'" (*Chambers*, *supra*, 7 Cal.3d at p. 672.)

*People v. Granado* (1996) 49 Cal.App.4th 317 (*Granado*), which construed a related enhancement similarly punishing gun "use" (§ 12022.5), is instructive. There, as the defendant drew a gun from his waistband a few feet away from one victim and displayed it while demanding money, another victim fled, only to be chased by a coperpetrator wielding a machete. (*Granado*, *supra*, at p. 320.) The reviewing court explained the fleeing victim did not have to perceive the gun for the firearm enhancement to apply because the defendant deployed it to attempt to control both victims, a "use" the Legislature sought to deter in addressing "the pervasive and inherent escalation of danger which arises from the defendant's act of deployment." (*Id.* at p. 327; see also *People v. Jacobs* (1987) 193 Cal.App.3d 375, 381-382 [audibly cocking gun in pocket constitutes "use" even though gun is not displayed].)

Defendant distinguishes *Granado* because it did not involve vicarious arming, but the distinction fails because the gun use enhancement applies here if a principal uses a firearm. (§ 12022.53, subd. (e)(1).) Here, the jury reasonably could conclude the coperpetrator's gun use facilitated Mendoza's robbery because even though

6

Mendoza did not personally perceive the weapon, he saw the effect it had on his coworker. Specifically, Millan "had his hands up giving them the money," causing Mendoza similarly to accede in fear to defendant's demand for his wallet and not to resist the theft of the items defendant and his accomplices took from the store. Simply put, the jury reasonably could conclude the coperpetrator used the gun in a manner causing Millan to raise his hands in the universal symbol of submission, thereby facilitating commercial robbery of Mendoza as well. As in *Granado*, this gun use constituted criminal conduct against a second victim. Substantial evidence therefore supports the firearm enhancement on count 2.

B.    *Substantial Evidence Supports the Gang Enhancement*

Defendant challenges the sufficiency of the evidence to support the gang enhancement on his two robbery convictions. He concedes he admitted his Eight Trey gang membership on numerous occasions, and he does not dispute he committed the robberies with other Eight Trey gang members, but he insists the evidence was consistent with the conclusion the three committed the offenses for their own benefit and not necessarily for their gang. Specifically, he contends "[i]t is certainly reasonable to assume that while these three may have committed these crimes together, they could have been 'on a frolic and detour unrelated to the gang.'" (Quoting *People v. Albillar* (2010) 51 Cal.4th 47, 62 (*Albillar*).)

Defendant's challenge is flawed in two key respects. First, the fact the circumstances may be reconciled with an innocent explanation does not warrant reversal of the jury's contrary conclusion. (*Bean*, *supra*, 46 Cal.3d at pp. 932-933.) Rather, the standard of review requires that we affirm the judgment unless under "no hypothesis

7

whatever is there sufficient substantial evidence to support it." (*People v. Redmond* (1969) 71 Cal.2d 745, 755.)

More fundamentally, defendant's supposition the underlying criminal conduct *must* benefit the gang to qualify for the enhancement is mistaken. Defendant notes "the fact that only three special edition phones were taken . . . would suggest they were for the three involved, rather than any direct benefit to the gang itself." But "specific intent to *benefit* the gang is not required," rather only "'specific intent to promote, further, or assist in any criminal conduct by gang members . . . .'" (*People v. Morales* (2003) 112 Cal.App.4th 1176, 1198 (*Morales*).)

Specifically, the gang enhancement in section 186.22, subdivision (b)(1), requires proof of two elements: "first, that the defendant committed a felony (a) for the benefit of, (b) at the direction of, *or* (c) in association with a criminal street gang; and second, that in connection with the felony, the defendant harbored the *specific intent* to (a) promote, (b) further, *or* (c) assist in any criminal conduct by gang members." (*In re Daniel C.* (2011) 195 Cal.App.4th 1350, 1358, original italics, boldface added.) Thus, the statute's "disjunctively worded" subparts in each element provide three separate and alternative means to satisfy each element. (*People v. Leon* (2008) 161 Cal.App.4th 149, 162 (*Leon*).)

Consequently, the prosecution need not establish that the underlying felony benefits the gang, but rather only that the defendant committed the offense in association with fellow gang members. (*Albillar*, *supra*, 51 Cal.4th at p. 60.) A defendant committing an offense with fellow gang members has committed the crime "in association" with the "'criminal street gang'" and the jury may infer an intent to assist criminal conduct by gang members. (*Leon*, *supra*, 161 Cal.App.4th at p. 163.) In other

8

words, "the jury could reasonably infer the requisite association from the very fact that defendant committed the charged crimes in association with fellow gang members." (*Morales*, *supra*, 112 Cal.App.4th at p. 1198; see, e.g., *People v. Ochoa* (2009) 179 Cal.App.4th 650, 661, fn. 7 [evidence sufficient when the defendant commits offense in association with fellow gang member].)

True, the perpetrators must associate "together *as gang members*" for the enhancement to apply (*Albillar*, *supra*, 51 Cal.4th at p. 62), but the jury could infer from the coordinated manner in which defendant and his accomplices entered the store, armed with a gun to backup defendant's demands, that they relied on their mutual gang ties to support each other in committing the offense and also relied on gang norms of violence to facilitate their escape and hinder investigation by threatening Mendoza with a return visit. (See *ibid.* ["their common gang membership ensured that they could rely on each other's cooperation in committing" the underlying crime and "that none of them would cooperate with the police"].) Substantial evidence supports the enhancement.

C.      *The Trial Court Did Not Abuse Its Sentencing Discretion*

Defendant contends the trial court abused its discretion by imposing the upper term of five years instead of a low or middle term of two or three years on his robbery conviction in count 1, and by imposing a consecutive term on the second robbery count instead of a concurrent sentence. We review the trial court's selection of an appropriate sentence for abuse of discretion. (*People v. Sandoval* (2007) 41 Cal.4th 825, 847.) Judicial discretion "'implies absence of arbitrary determination, capricious disposition or whimsical thinking.' [Citation.] [D]iscretion is abused whenever the court exceeds the bounds of reason, all of the circumstances being considered. [Citations.]" (*People v. Giminez* (1975) 14 Cal.3d 68, 72.) The burden is on the party attacking the

sentence to clearly show the sentencing decision was irrational or arbitrary. (*People v. Superior Court (Alvarez)* (1997) 14 Cal.4th 968, 977-978.) Absent the requisite showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review. (*Ibid.*)

A trial court must state its reasons for imposing an upper-term sentence or consecutive sentences. (Cal. Rules of Court, rule 4.406(b).) The trial court identified the following circumstances as aggravating factors warranting harsher punishment: (1) the crime involved a threat of great bodily harm and callous treatment of the victims; (2) the victims were vulnerable as store employees who happened to be on duty at work; (3) defendant exercised a position of leadership in committing the offense; (4) the offense involved planning and sophistication; (5) the robbery netted over $1,000 in cash and merchandise; and (6) the crime involved a violent felony with a gun posing a serious danger to society. The court specified it imposed the consecutive term on count 2 because the crime endangered a "second victim in the store."

Defendant now takes issue with each of these factors, arguing for example that the threat of harm and gun violence in the first and sixth factors were encapsulated in the firearm enhancements, and therefore relying on these factors to impose an upper term on count 1 or a consecutive sentence on count 2 constituted an improper dual use of facts. (See, e.g., *People v. Coleman* (1989) 48 Cal.3d 112, 165.) Defendant also argues the trial court erred in observing that his "insignificant" criminal record, while a mitigating factor, was "tempered" to a degree by another pending robbery charge and by his admission he drove the car in a drive-by shooting that killed a 16-year-old victim, though he was acquitted of murder.

Defendant forfeited these challenges to the trial court's discretionary sentencing choices by failing to object below. (*People v. Smith* (2001) 24 Cal.4th 849, 852; *People v. Scott* (1994) 9 Cal.4th 331, 356.) He did not raise a general objection, let alone provide the trial court an opportunity to address the specific objections he now raises, thereby forfeiting these claims. (*People v. Gonzalez* (2003) 31 Cal.4th 745, 755.)

He argues his request in his sentencing brief for the low term and a concurrent sentence should be construed as objecting to any greater sentence, preserving the issue for appeal. But a vague, general objection to dual use of facts — far more than occurred here, for example — is insufficient because it "d[oes] nothing to give the trial court a meaningful opportunity to correct any sentencing errors." (*People v. de Soto* (1997) 54 Cal.App.4th 1, 9.) There, "[c]ounsel objected to the imposition of the upper term, but gave no legal or factual basis to support the objection. He likewise raised cursory objections to the imposition of consecutive sentences and to the court's use of a fact constituting an unidentified element of the offense to aggravate and enhance his term. In contrast, his objections raised on appeal . . . articulate several *specific* reasons why he believes the court was wrong in its sentencing choices." (*Ibid.*, original italics.) The *de Soto* court explained the defendant's general objections below did not preserve his claim because "the obligation to formulate specific objections [rests] squarely on defense counsel, and not on the judge." (*Ibid.*) Similarly, we conclude a mere request in defendant's sentencing brief for a particular term is not sufficient to preserve an appellate challenge because it offers nothing to suggest why the trial court's sentencing choices amount to an abuse of discretion.

Defendant asserts his trial attorney rendered ineffective assistance of counsel by failing to object to his sentence on the grounds he now asserts on appeal. We

11

are not persuaded.  (See *People v. Fairbank* (1997) 16 Cal.4th 1223, 1241 [reviewing court need not scrutinize counsel's failure to object for deficient legal performance, if no prejudice shown].)  The flaw in defendant's challenge is that only a single aggravating circumstance is necessary to support imposing an upper term and another suffices for consecutive terms (*People v. Osband* (1996) 13 Cal.4th 622, 728-729; *People v. Moberly* (2009) 176 Cal.App.4th 1191, 1197-1198) and here the trial court identified numerous aggravating factors.

Thus, even if defendant had objected below and persuaded the trial court that some of its aggravating factors overlapped with each other or with elements of the firearm enhancements, multiple aggravating factors remained so that it is unlikely defendant would have obtained a more favorable result.  For example, the trial court reasonably could conclude defendant exercised a position of leadership by entering the store first and initiating the robbery, personally robbing Mendoza by demanding his wallet, and threatening Mendoza on behalf of his cohorts, "Okay *we'll* come get you later."  (Italics added.)  It is of no consequence that defendant can construe the evidence on appeal consistent with nonleadership positions.  (*Bean*, *supra*, 46 Cal.3d at pp. 932-933.)  Similarly, as defendant concedes, the offense involved some planning and sophistication and it unquestionably involved a large sum, each independently furnishing additional grounds besides defendant's leadership position for the upper term.  And defendant's robbery and threat of violence against a second victim provided ample further grounds for a consecutive sentence on count 2.  (See *People v. Caesar* (2008) 167 Cal.App.4th 1050, 1060-1061 [separate victims in separate counts alone supports consecutive sentencing], disapproved on another point in *People v. Superior Court*

*(Sparks)* (2010) 48 Cal.4th 1, 18.)  Defendant has shown no error in the trial court's sentencing choices or any likelihood of a different result had defense counsel objected.

III

DISPOSITION

The judgment is affirmed.


ARONSON, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.


13