62 Cal.Rptr.3d 214 (2007)
153 Cal.App.4th 114
The PEOPLE, Plaintiff and Respondent,
v.
Marcus Terelle CAESAR et al., Defendants and Appellants.
No. D050387.
Court of Appeal of California, Fourth District, Division One.
June 19, 2007.
*216 Doris M. Frizzell, Salida, CO, John L. Dodd, Tustin, CA, for Defendant and Appellant Marcus Terelle Caesar.
John L. Dodd & Associates and John L. Dodd, under appointment by the Court of Appeal, Tustin, for Defendant and Appellant Steven C. Godbolt.
Edmund G. Brown, Jr., Atty. Gen., Dane R. Gillette and Gary W. Schons, Asst. Attys. Gen., Gil Gonzalez and Randall D. Einhorn, Deputy Attys. Gen., for Plaintiff and Respondent.
Certified for Partial Publication.[*]
*215 IRION, J.
This matter involves convictions arising out of a confrontation between two groups of men in which guns were fired, killing one man and injuring several others.
The evidence at trial showed that Steven C. Godbolt was one of the shooters. A jury convicted Godbolt of one count of second degree murder (Pen.Code, § 187, subd. (a))[1] and four counts of unpremeditated attempted murder (§§ 664, 187, subd. (a)). The jury also found that Godbolt personally and intentionally discharged a firearm with respect to each count, proximately causing great bodily injury or death (§§ 12022.53, subd. (d), 1192.7, subd. (c)(8)).
In the same trial, Marcus Terelle Caesar, who did not fire a gun during the confrontation, was tried on the theory that he aided and abetted an assault and battery, and the natural and probable consequences of that assault and battery were the crimes committed by Godbolt. The jury convicted Caesar of one count of second degree murder (§ 187, subd. (a)), one count of premeditated attempted murder (§§ 664, 187, subd. (a)) and three counts of unpremeditated attempted murder (§§ 664, 187, subd. (a)). As to each of the counts, the jury also found that Caesar was a principal in the commission of the crime while another principal was armed with a firearm (§ 12022, subd. (a)(1)). Caesar admitted a prior strike and a prior *217 prison term (§§ 667, subds.(c), (e)(1), 667.5. subd. (b)).
The trial court sentenced Godbolt to 156 years to life in prison and sentenced Caesar to 76 years to life in prison, composed of both determinate and indeterminate terms. As relevant here, the trial court selected count 2 as the principle determinate term for Godbolt and ordered that counts 3, 4 and 5 were to be served consecutive to it, and selected count 3 as the principle determinate term for Caesar and ordered that counts 4 and 5 were to be served consecutive to it.
Both Caesar and Godbolt appeal.
First, Caesar argues that his conviction on count 2 for attempted premeditated murder should be reduced to attempted unpremeditated murder because Godbolt, who was the shooter, was convicted of attempted unpremeditated murder.
Second, Godbolt and Caesar both argue that the trial court impermissibly imposed consecutive sentences on the basis that each count involved separate victims.
Third, Godbolt and Caesar both argue that the trial court violated their federal constitutional right to a jury trial by sentencing them to upper terms (count 2 for Godbolt and count 3 for Caesar) based on circumstances in aggravation found by the trial court instead of the jury.
As we will explain, we conclude (1) that Caesar's conviction on count 2 must be reduced to attempted unpremeditated murder; (2) that the trial court did not err in imposing consecutive sentences on Godbolt and Caesar; and (3) that this case must be remanded for resentencing because the trial court imposed an upper term sentence based on facts not found by a jury.

I

FACTUAL AND PROCEDURAL BACKGROUND
On September 14, 2004, Caesar was visiting his girlfriend, who lived with her children, including her teenage son, Andre Clayton. During the visit, a friend of Clayton's accidentally backed into Caesar's vehicle. Caesar was upset by the accident and the reaction of Clayton and his friends. He told Clayton that he would return with some other people and they would teach Clayton a lesson.
Approximately two hours later, while Clayton was at home with several friends, Caesar returned with some other men. Four men, including Caesar, got out of Caesar's vehicle. According to a statement that one of the men in the vehicle gave to police, Caesar had asked the men in his vehicle whether they had guns.
The two groups of men assembled in the middle of the street for a fight. One man who had arrived with Caesar pointed a gun at Clayton. Clayton punched the man and knocked the gun out of his hand. Someone else shot Clayton, in the hip. Other shots were fired as Clayton's friends ran away. Caesar did not fire any shots, but two of the men who arrived with him did, including Godbolt. In total, at least 15 bullets were fired from at least two different guns. The men then got back into Caesar's vehicle and drove away.
Four of Clayton's friends were shot or injured as they ran away from the gunfire. Clayton and three other victimsJoe Harris, Dewayne Taylor, and Jesse McDowellsurvived their injuries. Yuseff Brown died after being shot in the back.
Godbolt and Caesar were tried together. Godbolt was convicted of one count of second degree murder (§ 187, subd. (a)), and four counts of unpremeditated attempted murder (§§ 664, 187, subd. (a)). Godbolt *218 was also found to have personally and intentionally discharged a firearm with respect to each count, proximately causing great bodily injury or death (§§ 12022.53, subd. (d), 1192.7, subd. (c)(8)).
Caesar, who was not one of the shooters, was prosecuted on the theory that he aided and abetted an assault and battery by instigating the confrontation between the two groups of men, and that he was guilty of murder and attempted murder because those crimes were a natural and probable consequence of the assault and battery. The jury convicted Caesar of one count of second degree murder (§ 187, subd. (a)), one count of premeditated attempted murder (§§ 664, 187, subd. (a)) and three counts of unpremeditated attempted murder (§§ 664, 187, subd. (a)). As to each of the counts, the jury also found that Caesar was a principal in the commission of the crime while another principal was armed with a firearm (§ 12022, subd. (a)(1)).
The trial court sentenced Godbolt to 156 years to life in prison, consisting of (i) an indeterminate term of 140 years to life, composed of a term of 15 years to life for the murder conviction (count 1), plus 25-year terms for each of the five firearm enhancements, to be served consecutive to (ii) a determinate term of 16 years, based on an upper term of nine years for count 2, plus three consecutive terms of 2 years 4 months (one-third the midterm) for each of counts 3, 4 and 5.
The trial court sentenced Caesar to 76 years to life in prison, consisting of (i) an indeterminate term of 44 years to life, based on a term of 30 years to life for the murder conviction (count 1) plus 14 years to life for the conviction for attempted premeditated murder (count 2), to be served consecutive to (ii) a 32-year determinate term, based on an upper term of 18 years for count 3, plus consecutive terms of 4 years 8 months (one-third the midterm) for each of counts 4 and 5, and additional time for the firearm enhancements and the prior prison term.
Godbolt and Caesar both appeal.

II

DISCUSSION

A. Caesar's Conviction on Count 2 Under the Natural and Probable Consequences Doctrine

We first address Caesar's contention that his conviction on count 2 for attempted premeditated murder should be reduced to attempted unpremeditated murder.
Both Godbolt and Caesar were convicted of the attempted murder of Clayton (count 2 as to both defendants). As to Godbolt, the jury found that "the attempted murder was not willful, deliberate and premeditated." (Italics added.) However, as to Caesar, the jury found that "the attempted murder was willful, deliberate and premeditated." (Italics added.)
As we have explained, the prosecution's theory against Caesar as to count 2 was that Caesar aided and abetted an assault and battery, and that the natural and probable consequence of the assault and battery was the attempted murder of Clayton. Caesar argues that he should not have been convicted of the premeditated attempted murder of Clayton in count 2 under the natural and probable consequences doctrine because Godbolt, who was convicted as the shooter, was found to have acted without premeditation. Put another way, Caesar argues that a defendant may not be convicted under the natural and probable consequences doctrine for a crime that the jury finds is not proven as to his codefendant who was alleged to have actually performed the crime.
*219 To evaluate this argument, we first provide an overview of the natural and probable consequences doctrine. The natural and probable consequences doctrine is one theory under which an aider and abettor may be convicted. "[A]n aider and abettor's liability for criminal conduct is of two kinds. First, an aider and abettor with the necessary mental state is guilty of the intended crime." (People v. McCoy (2001) 25 Cal.4th 1111, 1117, 108 Cal.Rptr.2d 188, 24 P.3d 1210 (McCoy).) Here, the intended crime was an assault and battery. "Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also `for any other offense that was a "natural and probable consequence" of the crime aided and abetted.'" (Ibid.) When the natural and probable consequences doctrine applies, an aider and abettor "is guilty not only of the offense he intended to facilitate or encourage, but also of any reasonably foreseeable offense committed by the person he aids and abets." (People v. Croy (1985) 41 Cal.3d 1, 12, 221 Cal.Rptr. 592, 710 P.2d 392, fn. 5 (Croy), italics added.) Thus, as relevant here, "if a person aids and abets only an intended assault, but a murder results, that person may be guilty of that murder, even if unintended, if it is a natural and probable consequence of the intended assault." (McCoy, at p. 1117, 108 Cal.Rptr.2d 188, 24 P.3d 1210, citing People v. Prettyman (1996) 14 Cal.4th 248, 260, 267, 58 Cal.Rptr.2d 827, 926 P.2d 1013 (Prettyman), italics added.)
For a defendant to be convicted under the natural and probable consequences doctrine, "the trier of fact must find that the defendant, acting with (1) knowledge of the unlawful purpose of the perpetrator; and (2) the intent or purpose of committing, encouraging, or facilitating the commission of a predicate or target offense; (3) by act or advice aided, promoted, encouraged or instigated the commission of the target crime.[[2]] But the trier of fact must also find that (4) the defendant's confederate committed an offense other than the target crime; and (5) the offense committed by the confederate was a natural and probable consequence of the target crime that the defendant aided and abetted." (Prettyman, supra, 14 Cal.4th at p. 262, 58 Cal.Rptr.2d 827, 926; P.2d 1013, fn. omitted.)[3] Thus, it is clear that in applying the natural and probable consequences doctrine, the jury must make a finding as to the crime committed by the defendant's confederate.[4]
*220 In determining whether the crime committed by a confederate was the natural and probable consequence of a crime aided and abetted by the defendant, the inquiry is strictly objective, and does not depend on the defendant's state of mind as to the confederate's crime. "The determination whether a particular criminal act was a natural and probable consequence of another criminal act aided and abetted by a defendant requires application of an objective rather than subjective test." (People v. Nguyen (1993) 21 Cal. App.4th 518, 531, 26 Cal.Rptr.2d 323, italics added.) "[T]he issue does not turn on the defendant's subjective state of mind, but depends upon whether, under all of the circumstances presented, a reasonable person in the defendant's position would have or should have known that the charged offense was a reasonably foreseeable consequence of the act aided and abetted by the defendant." (Ibid.)
Applying the natural and probable consequences doctrine here, in order to find Caesar guilty of attempted premeditated murder as to Clayton, the jury had to find the following: (1) that Caesar aided and abetted an intended assault and battery; (2) that Godbolt, as the shooter, committed attempted premeditated murder as to Clayton; and (3) that a reasonable person in Caesar's position would have or should have known that the attempted premeditated murder of Clayton was a reasonably foreseeable consequence of the assault and battery.
Here, the second element was missing because the jury made an explicit finding that Godbolt did not act with premeditation in attempting to murder Clayton. Accordingly, the jury did not make the necessary finding to convict Caesar of attempted premeditated murder under the natural and probable consequences doctrine. At most, according to the jury's finding regarding the crime committed by Caesar's confederate (i.e., Godbolt), the jury could have convicted Caesar of attempted unpremeditated murder.[5]
Accordingly, we agree with Caesar that his conviction on count 2 must be reduced to a conviction for attempted unpremeditated murder.

B. Consecutive Sentences

We next consider the challenge brought by both Godbolt and Caesar to the trial court's decision to impose consecutive sentences for their convictions for attempted unpremeditated murder, i.e., counts 3, 4 and 5 for Godbolt and counts 4 and 5 for Caesar.
In sentencing Godbolt, the trial court stated that it would sentence consecutively for counts 3, 4 and 5 because each count involved "a separate victim." As to Caesar, *221 the trial court stated that it would sentence consecutively for counts 4 and 5 because each count involved "a separate victim and separate conduct."
"[A] trial court has discretion to determine whether several sentences are to run concurrently or consecutively. [Citations.] In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal. [Citations.] Discretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered." (People v. Bradford (1976) 17 Cal.3d 8, 20, 130 Cal.Rptr. 129, 549 P.2d 1225.)
The criteria applicable to the trial court's discretion are set forth in California Rules of Court, rule 4.425,[6] which states that in imposing consecutive sentences a trial court may consider: (1) whether the "crimes and their objectives were predominantly independent of each other"; (2) whether the "crimes involved separate acts of violence or threats of violence"; and (3) whether the "crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (Rule 4.425(a)(1)-(3).) However, these criteria are not exclusive. Rule 4.408(a) states: "[T]he enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made. Any such additional criteria must be stated on the record by the sentencing judge."
In People v. Calhoun (2007) 40 Cal.4th 398, 53 Cal.Rptr.3d 539, 150 P.3d 220 (Calhoun), our Supreme Court recently addressed an issue relevant to our analysis here, concluding that the presence of separate victims named in separate counts will justify an upper term sentence, and also stating in the course of its analysis that the same facts would, in the alternative, be sufficient to justify a consecutive sentence.
In Calhoun, the defendant had been convicted of two counts of vehicular manslaughter and two counts of reckless driving after killing two people and severely injuring two others. (Calhoun, supra, 40 Cal.4th at p. 401, 53 Cal.Rptr.3d 539, 150 P.3d 220.) The trial court imposed the upper term sentence. As an aggravating factor, the trial court relied on the fact that consecutive sentences could have been imposed but were not. (Id. at p. 405, 53 Cal.Rptr.3d 539, 150 P.3d 220.) In the same discussion, the trial court also noted that there were "`separate victims of the crime.'" (Ibid.) As Calhoun pointed out, the trial court was not clear as to (1) whether it was identifying the presence of separate victims as the fact that would have justified consecutive sentences or (2) whether it was identifying the presence of separate victims as a separate aggravating factor. (Ibid.)
Assuming for the sake of its discussion that the trial court had intended the presence of separate victims as a separate aggravating factor, Calhoun discussed whether a trial court may use "the fact of multiple victims" as a fact in aggravation "when each count of which the defendant was convicted names only one victim." (Calhoun, supra, 40 Cal.4th at p. 406, 53 Cal.Rptr.3d 539, 150 P.3d 220.) Our Supreme Court explained that the "[defendant's] single act of violence caused either the death or serious injury of four people. The gravity of and his culpability for this offense is increased by the number of those he harmed. `"A defendant who commits an act of violence ... by a means *222 likely to cause harm to several persons is more culpable than a defendant who harms only one person."' [Citation.] [Defendant] is therefore properly subject to increased punishment for each ... count." (Id. at p. 408, 53 Cal.Rptr.3d 539, 150 P.3d 220.)
In addition, presumably because it was unclear whether the trial court had intended to impose an upper term based solely on the fact that consecutive sentences could have been imposed but were not, Calhoun also surveyed the case law on the issue of whether consecutive sentences could be properly imposed based on the presence of separate victims in separate counts. (Calhoun, supra, 40 Cal.4th at p. 407, fn. 6, 53 Cal.Rptr.3d 539, 150 P.3d 220.)[7]
Concluding its analysis, Calhoun stated that "there is no persuasive reason why the trial court should not be allowed to consider the fact of multiple victims as a basis for imposing either the upper term or a consecutive sentence." (Calhoun, supra, 40 Cal.4th at p. 408, 53 Cal.Rptr.3d 539,150 P.3d 220, italics added.)
Based on our Supreme Court's analysis in Calhoun, we conclude that the naming of separate victims in separate counts is a circumstance on which a trial court may properly rely to impose consecutive sentences. Accordingly, we reject Godbolt and Caesar's argument that the trial court erred in imposing consecutive sentences based on that factor.
Caesar raises a related issue arising from the fact that he was convicted based on the natural and probable consequences doctrine. He argues that unlike Godbolt, who shot at several different victims, he engaged in only a single wrongful act: aiding and abetting an assault and battery, and thus he should not have received consecutive sentences. We reject this argument. As our Supreme Court made clear in Calhoun, the relevant culpable factor is not that a defendant engaged in multiple criminal acts; instead, the "gravity of and his culpability for [the] offense is increased by the number of those he harmed." (Calhoun, supra, 40 Cal.4th at p. 408, 53 Cal.Rptr.3d 539, 150 P.3d 220, italics added.) This reasoning applies equally to Caesar, who aided and abetted an assault and battery, and Godbolt, who was the shooter. Both men engaged in wrongful conduct that resulted in harm to multiple victims.[8] Accordingly, the trial court properly imposed consecutive sentences for both Godbolt and Caesar.

C. Imposition of Upper Term Sentences Based on Facts Not Found by the Jury Violated Caesar's and Godbolt's Sixth Amendment Rights[**]

DISPOSITION
Caesar's conviction on count 2 shall be reduced to a conviction for attempted unpremeditated murder, and the trial court shall resentence Caesar accordingly. Further, this matter is remanded for the trial court to conduct a new sentencing hearing for both Caesar and Godbolt consistent with the views expressed in Cunningham, supra, 549 U.S. ___,' 127 S.Ct. 856, 860. *223 In all other respects, the judgment is affirmed.
WE CONCUR: HALLER, Acting P.J., and McDONALD, J.
NOTES
[*] Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of part II.C.
[1] Unless otherwise indicated, all further statutory references are to the Penal Code.
[2] The target crime here is the assault and battery.
[3] As explained more fully by another court, "[a]lthough the perpetrator and the aider and abettor need not be tried jointly, the jury first must determine the crimes and degrees of crimes originally contemplated and committed, if any, by the perpetrator. Next, the jury must decide whether the aider and abettor knew of the perpetrator's intent to commit the originally contemplated criminal acts and whether the aider and abettor intended to encourage or facilitate the commission of those acts. In other words, the jury must determine if the aider and abettor is liable vicariously for, i.e., guilty of, the crime or crimes originally contemplated. Then the jury must determine whether other crimes and degrees of crimes charged against the aider and abettor were committed by the perpetrator. If so, the jury must determine whether those crimes, although not necessarily contemplated at the outset, were reasonably foreseeable consequences of the original criminal acts encouraged or facilitated by the aider and abettor." (People v. Woods (1992) 8 Cal. App.4th 1570, 1586, 11 Cal.Rptr.2d 231, italics added.)
[4] As our Supreme Court has stated, "at trial each juror must be convinced, beyond a reasonable doubt, that the defendant aided and abetted the commission of a criminal act, and that the offense actually committed was a natural and probable consequence of that act." (Prettyman, supra, 14 Cal.4th at p. 268, 58 Cal.Rptr.2d 827, 926 P.2d 1013, second italics added.) This is because under the natural and probable consequences doctrine, an aider and abettor is "guilty ... of any reasonably foreseeable offense committed by the person he aids and abets." (Croy, supra, 41 Cal.3d at p. 12, fn. 5, 221 Cal.Rptr. 592, 710 P.2d 392, italics added.)
[5] In opposing Caesar's argument, the Attorney General relies on McCoy, supra, 25 Cal.4th 1111, 1117, 108 Cal.Rptr.2d 188, 24 P.3d 1210, in which our Supreme Court held that an aider and abettor could properly be convicted of a greater degree of a murder than his confederate who was the shooter. McCoy does not apply here because, as the Supreme Court made clear, its holding did not apply to a conviction obtained under the natural and probable consequences doctrine. The court emphasized, "[O]nly an aider and abettor's guilt of the intended crime is relevant here. Nothing we say in this opinion necessarily applies to an aider and abettor's guilt of an unintended crime under the natural and probable consequences doctrine." (Ibid., italics added.)
[6] All further rule references are to the California Rules of Court.
[7] We note that the parties' briefing here extensively discusses one of those opinions: People v. Valenzuela (1995) 40 Cal.App.4th 358, 46 Cal.Rptr.2d 715.
[8] Caesar cites case law that applies section 654 to situations in which the defendant was convicted under the natural and probable consequences doctrine. (People v. Bradley (2003) 111 Cal.App.4th 765, 4 Cal.Rptr.3d 166; People v. Nguyen (1988) 204 Cal.App.3d 181, 251 Cal.Rptr. 40.) These cases are inapposite because they do not deal with the situation of multiple victims.
[**] See footnote *, ante.