Filed 9/17/14  P. v. Weddle CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C075463 |
| Plaintiff and Respondent, | (Super. Ct. No. 11F08162) |
| v. | |
| DANIEL MARLAN WEDDLE, | |
| Defendant and Appellant. | |

A jury found defendant Daniel Marlan Weddle guilty of first degree murder (Pen. Code, § 187, subd. (a))[1] and assault with a firearm (§ 245, subd. (b)), with enhancements for personally using a firearm (§§ 12022.53, subd. (d), 12022.5, subds. (a), (d)).  He was charged with shooting and killing his wife and assaulting her friend (by pointing a loaded gun at her) moments before the murder.  The trial court sentenced him to 50 years to life

---

[1]  Further undesignated statutory references are to the Penal Code.

1

for the murder and accompanying enhancement and a consecutive term of 10 years for the assault and accompanying enhancement.

Defendant timely appeals, contending the trial court abused its discretion by imposing a consecutive term for the assault. Disagreeing, we affirm.

**FACTS**

Margaret Weddle was separated from defendant--her husband--and shared an apartment with her friend Crystal Duchien, now known as Crystal Huffaker. Defendant visited the apartment once or twice a week. Weddle told Huffaker she was going to divorce her husband.

Defendant brought a handgun to the apartment after a series of burglaries in the apartment complex. Defendant showed Weddle and Huffaker how to operate the gun, which Weddle kept loaded and holstered in her bedroom.

On December 1, 2011, Weddle was at work when defendant came to the apartment. He told Huffaker that Weddle had told him money was missing from the apartment. When Weddle arrived at the apartment about 10 minutes later, she put her purse down in the living room (on top of divorce paperwork that she had brought home with her) and went to her bedroom to talk with defendant. Huffaker, who remained on the living room couch, could hear the two discussing the missing money and jewelry. After they came out to the living room, defendant lifted up Weddle's purse and saw the divorce papers. He threw the divorce papers on the floor and confronted Weddle about them; Weddle asked him to leave.

Defendant went into Weddle's bedroom and emerged holding the gun. Weddle kept telling defendant to leave as the two argued. Defendant told Weddle to sit down in the living room. Once she complied, defendant pointed the gun at her and pulled the trigger several times, but the gun jammed and did not fire. Defendant told Weddle she was "lucky" the gun jammed. Weddle asked defendant if he intended to kill her and defendant said, "I've thought about it several times."

Weddle stood up and asked defendant to leave again. Defendant chambered a round and pointed the gun at Huffaker, telling Weddle he would shoot Huffaker if Weddle did not sit down. Weddle sat down and defendant immediately shot her several times, mortally wounding her. He then left the apartment.

Defendant drove to his parents' home. Calling his mother shortly before his arrival, defendant said, "mom, I've lost it . . . I shot Margaret." Defendant also called 911. He was arrested in front of his parents' house, and the murder weapon, a .380-caliber pistol, was found nearby. Huffaker testified that some time before the incident, defendant told her that he had thought about killing Weddle.

Testifying on his own behalf, defendant admitted killing Weddle but claimed he "did not mean" to shoot her. While admitting responsibility for her death, defendant said Weddle bore some blame for "playing with [his] emotions." In rebuttal, the People introduced his post-arrest statement that he wondered "if the bitch is dead."

**DISCUSSION**

Defendant contends the trial court abused its discretion by imposing a consecutive 10-year term for the assault conviction and deadly weapon enhancement for pointing the gun at Huffaker and threatening to shoot her.[2] In support of this contention, defendant argues that: he had no prior criminal record, this crime and the murder of Weddle were "not entirely independent of each other," he had no motive to shoot Huffaker, and he called 911 shortly after the shooting.

First, defendant's lack of a prior record was listed as the sole mitigating factor in the probation report. The trial court indicated at sentencing that it was also considering defendant's early acknowledgment of wrongdoing (which would include calling 911) as a

---

[2] Defendant had initially and correctly claimed he was entitled to presentence credit, but withdrew his claim (which the People properly conceded) after the trial court issued an amended abstract of judgment which includes credit for 751 actual days served.

3

mitigating factor.  Thus these points were properly considered by the trial court as mitigating factors.  (See Cal. Rules of Court, rule 4.423(b)(1), (3).)  But the trial court was under no obligation to find that these mitigating factors outweighed the many aggravating factors presented by defendant's conduct.  Here, the aggravating factors including that the crime "involved great violence . . . disclosing a high degree of cruelty, viciousness, or callousness" and that defendant "took advantage of a position of trust or confidence," as noted by the probation report.  (See Cal. Rules of Court, rule 4.421(a)(1), (11).)  Defendant does not challenge the applicability of these factors in aggravation.

Second, whether the assault and murder were independent of each other is but one factor the trial court should consider in making its decision regarding consecutive sentencing.  As noted by the probation report, defendant's crimes "involved separate acts of violence or threats of violence," another factor.  (See Cal. Rules of Court, rule 4.425(a)(2).)  " '[A] trial court has discretion to determine whether several sentences are to run concurrently or consecutively.  [Citations.]  In the absence of a clear showing of abuse, the trial court's discretion in this respect is not to be disturbed on appeal.  [Citation.]  Discretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered.'  [Citation.]  [¶]  The criteria applicable to the trial court's discretion are set forth in California Rules of Court, rule 4.425[Fn.], which states that in imposing consecutive sentences a trial court may consider:  (1) whether the 'crimes and their objectives were predominantly independent of each other'; (2) whether the 'crimes involved separate acts of violence or threats of violence'; and (3) whether the 'crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior.'  [Citation.]  However, these criteria are not exclusive.  [California Rules of Court, rule] 4.408(a) states:  'The enumeration in these rules of some criteria for the making of discretionary sentencing decisions does not prohibit the application of additional criteria reasonably related to the decision being made.  Any such additional criteria must be

4

stated on the record by the sentencing judge.' " (*People v. Caesar* (2008) 167 Cal.App.4th 1050, 1059-1060, disapproved on other grounds in *People v. Superior Court* (*Sparks*) (2010) 48 Cal.4th 1, 18.)

Courts have repeatedly held that violent conduct that threatens or harms more than one victim may be punished with consecutive sentences even if the offenses occurred during a single course of conduct. (See, e.g., *People v. Calhoun* (2007) 40 Cal.4th 398, 408; *People v. Leon* (2010) 181 Cal.App.4th 452, 468; *People v. Shaw* (2004) 122 Cal.App.4th 453, 459; *People v. Gutierrez* (1992) 10 Cal.App.4th 1729, 1739; *People v. Leung* (1992) 5 Cal.App.4th 482, 502-505.)

Here, the trial court found that the assault and murder involved "distinctly different targets" and imposing a concurrent term would inappropriately disregard "the damage done and the distinctly different crime" committed against Huffaker.

We agree that the murder of Weddle and the assault on Huffaker were distinct crimes involving discrete violent acts as well as different victims. After seeing defendant pull the trigger multiple times while pointing the gun at his wife, Huffaker watched as defendant chambered a round and then pointed the gun anew, this time at her. With the gun still pointed at her, he told Weddle he would kill Huffaker if Weddle did not sit down--a situation over which Huffaker had no control. This conduct was separate from the murder itself.

As we have described, defendant's assault on Huffaker involved a distinct act which caused separate harm.[3] The trial court considered the mitigating factors raised by defendant and was well within its discretion to impose a consecutive term for the assault.

---

[3] Huffaker told the probation officer that her anxiety level "shot through the roof" since she had to go to court, and she had "mostly become a home and church body." Even though she knew defendant was incarcerated and she was safe, "my head doesn't make me feel safe."

5

## DISPOSITION

The judgment is affirmed.

      DUARTE      , J.

We concur:

      RAYE      , P. J.

      HULL      , J.