Filed 12/3/15  P. v. Carrillo CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061854 |
| v. | (Super.Ct.No. SWF1301087) |
| RUDY MODESTO CARRILLO, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Angel M. Bermudez, Judge.  Affirmed.

John F. Schuck, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr. and Quisteen S. Shum, Deputy Attorneys General, for Plaintiff and Respondent.

One of two motorcycle officers clocked the speed of defendant Rudy Carrillo at more than 60 miles per hour on Pechanga Parkway, so one of them initiated a traffic stop.

1

However, instead of stopping, defendant, who was driving a stolen vehicle, executed a high-speed three-point turn and accelerated in the direction of the officer, striking the officer's motorcycle and the tip of the officer's foot. Then defendant spun out slightly, and accelerated towards the second officer, who struck some signage in an attempt to avoid being struck, as defendant got away. Hours later, defendant was arrested at a friend's house by police officers conducting a probation check. Defendant was charged with two counts of attempted murder (Pen. Code, §§ 664, subd. (e), 187, subd. (a)), taking or driving a vehicle without the owner's permission (Veh. Code, § 10851, subd. (a)), and two counts of assault with a deadly weapon upon a peace officer (Pen. Code, § 245, subd. (c)).[1] A jury acquitted defendant of the attempted murder counts, but convicted him of the remaining charges, and defendant was sentenced to a term of 10 years in state prison. Defendant appeals.

On appeal, defendant argues the court erred in (1) allowing the prosecution to impeach him with three of his five prior felony convictions, and (2) imposing consecutive, rather than concurrent, terms for the two assault convictions. We affirm.

## BACKGROUND

In February 2013, defendant was staying in the home of Phyllis Gordon, who allowed him to use her 2000 GMC pickup truck. The truck was black with chrome rims. However, a disagreement arose over defendant's use of the truck while drinking, so Phyllis told defendant he could not use it anymore, and told him to leave. Defendant

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

became so enraged that Phyllis locked herself in her bedroom, during which time defendant left the house, taking the truck. Defendant did not have permission to take the truck.

Shortly thereafter, defendant showed up at the home of Maddy Witt, claiming to be a friend of her son, and asking if he could help around the house. Defendant was driving a black truck. Maddy and her disabled husband lived on two acres in Hemet, where there was a garage with a painter's booth for painting cars. Maddy's husband invited defendant into the home to help with work, and defendant stayed there for three to five days. During this time period, Maddy learned from her son that defendant was not a friend, but was, instead, a thief. Maddy therefore took steps to get defendant out of the home. However, when he left, defendant's truck was no longer black; it had been spray painted white, and the chrome wheels had been painted black.

On March 6, 2013, Deputies Hughes and Hernandez were on duty in Temecula, monitoring vehicles for compliance with speed limits using an electronic device called a lidar. They were on the west side of the roadway facing northbound on Pechanga Parkway, when Deputy Hughes observed a white truck traveling in his direction at 60 miles per hour, in excess of the 40 mile-per-hour posted speed limit. As soon as the lidar device registered the speed, the deputy activated his emergency lights and drove northbound on the shoulder, along the west side of the road, against traffic.

When he reached defendant's vehicle, the deputy made eye contact and pointed, directing defendant to pull over. Defendant raised his right hand as if to acknowledge the deputy, so Deputy Hughes assumed he was going to pull over. Deputy Hughes made a

3

U-turn and was catching up to defendant as defendant turned into a gated area, stopping his truck just inside the gate. As the deputy stopped his motorcycle and began to dismount, he heard the truck moving forward with heavy acceleration. The truck's tires spun in the gravel as defendant commenced a left turn, reversed, and repeated the maneuver, making a three-point turn.

Then defendant put the truck in "drive" and accelerated in the direction of the deputy, who was now off his motorcycle. The deputy, who was approximately 10 feet away, saw defendant looking straight in the deputy's direction, so Deputy Hughes pulled out his firearm and told defendant to stop. Defendant's eyes were visible to the deputy, who did not observe symptoms of alcohol use. Defendant raised his hands off the steering wheel (as if to say, "don't shoot"), then placed his hands back on the steering wheel, gunned his engine and came straight towards the officer. Deputy Hughes moved to the right as fast as he could as defendant's vehicle passed, but the left rear tire of the truck clipped part of the deputy's boot.

As defendant sped off, Deputy Hughes saw the truck veer to the left across the double yellow lines, heading in the direction of Deputy Hernandez. In so doing, defendant's vehicle came very close to a driver traveling north on Pala Road near Pechanga, causing that driver to swerve off the road. Defendant cut off people, nearly striking other cars, and crossing over into oncoming traffic.

Deputy Hernandez heard Deputy Hughes yelling, and left his position on the side of the road, made a U-turn, and pulled into the roadway. He turned and saw Hughes pointing his firearm at the driver, and observed defendant's truck accelerating out of the

4

driveway. Then, the truck steered right towards Deputy Hernandez, crossing over the double yellow lines. Defendant was driving aggressively, very fast, and headed straight at the deputy. Deputy Hernandez accelerated his motorcycle and drove through some signs, into the fence behind him, to avoid being struck by the truck. This caused significant damage to the motorcycle. Defendant's truck drove right through the location where Hernandez's motorcycle had been, and continued northbound on Pechanga Parkway.

At approximately 3:00 p.m. that same day, Murrietta police officer Brian Quick went with fellow officer Huss to a residence to serve a felony warrant on the resident at that location. Defendant answered the door. Officer Huss asked defendant if he were the homeowner, but defendant informed him that the homeowner was upstairs asleep. Officer Huss went upstairs while Officer Quick interacted with defendant. Defendant identified himself with a false name and date of birth, stating he was 42 years old, and indicating he was born in 1967. When Officer Huss came back downstairs, he looked at defendant's cell phone and showed it to Officer Quick. There was a test message from defendant to an unknown recipient indicating defendant had been in a high speed chase. Officer Huff then did a search of defendant's person, in which he located a shaved key, used for stealing cars.

Defendant was charged with separate counts of attempting to murder the two sheriff's deputies (§§ 664, subd. (e), 187, subd. (a), counts 1, 2), driving or taking a vehicle without owner's consent (Veh. Code, § 10851, subd. (a), count 3), and two counts of assault with a deadly weapon against a peace officer as to each of the deputies (§ 245, subd. (c), counts 4, 5). It was further alleged in connection with counts 1 and 2 (the

5

attempted murder counts) that defendant used a deadly weapon (motor vehicle) (§ 12022, subd. (b)(1)), and that he had suffered four prior convictions for which he had served prison terms (prison priors). (§ 667.5, subd. (b).)

Defendant was tried by a jury and testified on his own behalf.[2] The jury acquitted defendant of the attempted murder charges in counts 1 and 2, but convicted him of the remaining charges. The court struck one of the prison priors, and defendant admitted the other four prior convictions. The court sentenced defendant to the upper term of 5 years on count 4 (§ 245, subd. (c)), with consecutive subordinate terms reflecting one-third the midterm for counts 3 and 5, plus one year each for the three prison priors, for a total sentence of 10 years in prison. Defendant appealed.

## DISCUSSION

1.      *The Trial Court Properly Exercised Its Discretion in Ruling Defendant's Prior Convictions Were Admissible.*

In limine, the prosecution sought admission of six prior convictions, with which to impeach defendant if he testified. In turn, defendant sought a ruling that not all of his prior convictions be admitted. Defendant's record of convictions includes a 1991 conviction for felony driving under the influence (Veh. Code, § 23152[3]; a 1994 conviction for being a felon in possession of a firearm (§ 12021, subd. (a)(1)), a 2001

---

[2] By way of defense, defendant asserted he had been drinking since 10:00 a.m., and that his judgment was impaired.

[3] The record does not indicate whether the conviction was for driving under the influence (Veh. Code, § 23152, subd. (a)) or driving with a 0.08 or higher blood alcohol level (Veh. Code, § 23152, subd. (b)).

6

conviction for sexual battery (§ 243.4), two convictions, in 2005 and 2006, for possession for sale of controlled substances (Health & Saf. Code, § 11378), and a 2006 conviction for failing to register as a sex offender (§ 290).

The court ruled that the prior convictions were admissible for impeachment after determining that the probative value of the prior convictions was not outweighed by the possibility of prejudice. Notwithstanding the in limine ruling, defendant did testify. Defendant now argues on appeal that the court should have excluded the sexual battery and felony drunk driving convictions. We disagree.

For purpose of attacking the credibility of a witness, it may be shown that he or she has been convicted of a felony, absent certain circumstances where the prior conviction is not viable. (Evid. Code, § 788.) Under the "Truth-in-Evidence" provision of Proposition 8 in 1982, section 28, subdivision (f), of article I of the California Constitution, "[a]ny prior felony conviction of any person in any criminal proceeding" may be "used without limitation for purposes of impeachment or enhancement of sentence in any criminal proceeding."

No witness, therefore, has the right to give testimony immune from challenge or impeachment. (*People v. Collins* (1986) 42 Cal.3d 378, 387.) However, the admissibility of any past misconduct for impeachment is limited by the relevance requirement of moral turpitude. (*People v. Edwards* (2013) 57 Cal.4th 658, 722.) Beyond this, trial courts have broad discretion to admit or exclude prior convictions for impeachment purposes. (*People v. Hinton* (2006) 37 Cal.4th 839, 887, citing *People v. Collins, supra,* 42 Cal.3d at p. 389.) A trial court's exercise of discretion will not be

disturbed unless it appears that the resulting injury is sufficiently grave to manifest a miscarriage of justice. (*People v. Green* (1995) 34 Cal.App.4th 165, 182.)

When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, whether it is for the same or similar conduct as the charged offense, and what effect its admission would have on the defendant's decision to testify. (*People v. Clark* (2011) 52 Cal.4th 856, 931.)

Here, the court excluded evidence of the prior conviction for failing to register as a sex offender because it was not clear if that was a crime of moral turpitude. The remaining prior convictions relate to crimes involving moral turpitude: sexual battery (*People v. Chavez* (2000) 84 Cal.App.4th 25, 30); felony drunk driving (*People v. Forster* (1994) 29 Cal.App.4th 1746, 1757); possession of a firearm by an ex-felon (*People v. Robinson* (2011) 199 Cal.App.4th 707, 716); and possession of drugs for sale (*People v. Harris* (2005) 37 Cal.4th 310, 337, citing *People v. Castro* (1985) 38 Cal.3d 301, 317).

This does not end our enquiry, because Evidence Code section 352 allows the trial court to exclude otherwise relevant evidence if its probative value is outweighed by the probability its admission will create a substantial danger of undue prejudice. In this respect, defendant argues that the 1991 conviction for felony drunk driving was too remote in time. It is true that remoteness of evidence weighs in favor of exclusion (*People v. Harris* (1998) 60 Cal.App.4th 727, 739.)

However, convictions remote in time are not automatically inadmissible. (*People v. Mendoza* (2000) 78 Cal.App.4th 918, 925-926.) Even a fairly remote prior conviction

8

is admissible if the defendant has not led a legally blameless life since the time of the remote prior. (*People v. Green, supra,* 34 Cal.App.4th at pp. 182-183; *People v. Muldrow* (1988) 202 Cal.App.3d 636, 647-648.) Defendant has not led a blameless life since 1991.

Defendant also argues that the sexual battery conviction should have been excluded because sexual offenses are especially prejudicial. However, the trial court directed that the conviction be described as "sexual battery of an adult" so the jury would not be left with the impression that it was an offense against a child. Although not "sanitized," any undue prejudice was eliminated by the court's proviso.

In the present case, we find no prejudice. Notwithstanding the trial court's rulings respecting the prior conviction evidence, defendant testified in his own behalf, admitted stealing the truck and nearly striking the two officers as they attempted to apprehend him. Nevertheless, he was acquitted of the most serious crimes. The evidence did not prejudice defendant.

2.  *The Trial Court Properly Imposed Consecutive Terms for Each Assault Against a Peace Officer.*

At sentencing, defense counsel requested that the court impose concurrent terms for counts 4 and 5, the two convictions for assault with a deadly weapon against a peace officer. The court imposed a consecutive, one-third the midterm sentence for count 5. On appeal, defendant argues that the imposition of consecutive terms constitutes an abuse of discretion. We disagree.

9

It is well established that a trial court has discretion to determine whether several sentences are to run concurrently or consecutively (§ 669, subd. (a); *People v. Giminez* (1975) 14 Cal.3d 68, 71-72). In the absence of a clear showing of abuse, the trial court's discretion will not be disturbed on appeal (*People v. Caesar* (2008) 167 Cal.App.4th 1050, 1059 [disapproved on another ground in *People v. Superior Court* (*Sparks*) (2010) 48 Cal.4th 1, 18]).

Criteria affecting the decision to impose consecutive rather than concurrent sentences include facts relating to the crimes, including whether or not the crimes involved separate acts of violence or threats of violence (Cal. Rules of Ct., rule 4.425(a)(2)). The presence of separate victims named in separate counts will justify a consecutive sentence. (*People v. Caesar, supra,* 167 Cal.App.4th at p. 1060-1061, citing *People v. Calhoun* (2007) 40 Cal.4th 398, 408.)

Here, defendant committed separate acts of violence to separate victims. The trial court properly exercised its discretion in deciding to impose consecutive terms.

### DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

KING
J.

MILLER
J.

10