Filed 8/29/16  P. v. Larson CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E063619 |
| v. | (Super.Ct.No. FVI1404408) |
| RICHARD TERRY LARSON, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Debra Harris, Judge.  Affirmed.

Melanie K. Dorian, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and A. Natasha Cortina, Deputy Attorneys General, for Plaintiff and Respondent.

**FACTUAL AND PROCEDURAL HISTORY**

A.      PROCEDURAL HISTORY

On April 16, 2015, a jury found defendant and appellant Richard Terry Larson guilty of two counts of assault with a deadly weapon under Penal Code[1] section 245, subdivision (a)(1).  In a bifurcated trial, the trial court found true the allegations that defendant had three strike priors under sections 677, subdivisions (b) through (i), and 1170.12, subdivisions (a) through (d); three prior serous felony convictions under section 667, subdivision (a)(1); and three prison priors under section 667.5, subdivision (b).

On May 14, 2015, the trial court sentenced defendant to 84 years to life as follows: 25 years to life for each of the assault with a deadly weapon convictions, five years for each prior serious felony, and two years for each prison prior.

Defendant filed a timely notice of appeal.

B.      FACTUAL HISTORY

On December 1, 2014, defendant broke into his sister Elizabeth Punton's home to get some food.  First, defendant tried to enter by slicing the screen door with a knife.  When that did not work, he broke a window.  Punton had been next door where her daughter, Wendy Faber, lived with her husband and children.  When Punton returned, she found defendant in her backyard.  He appeared angry and told Punton to let her dog run loose.  Punton asked defendant to leave and the two of them started to argue loudly.

---

[1]  All further statutory references are to the Penal Code unless otherwise indicated.

Faber heard yelling and screaming from next door and ran over because she knew that defendant was not welcome at her mother's home. When Faber arrived, she too asked defendant to leave. Defendant told Faber to "shut up . . . I'm not talking to you." Defendant was belligerent. He shoved Faber then tried to punch her. The women warned defendant that they would call the police if he did not stop. Punton then attempted to step between defendant and her daughter. Defendant stopped momentarily, said he had something for Faber, and headed to the carport in the front yard.

Punton and Faber quickly tried to close the gate between the front and back yards to prevent defendant's return. It was an eight-foot high chain-link gate with about two-inch holes in it wherein people could clearly see through the fence. It did not have a locking mechanism so Punton and Faber held onto it to secure the gate. When defendant returned a few minutes later, he tried to push through the gate. After that did not work, he pulled out a knife and stabbed at the two women's hands as they tried to hold on. Because the fence was chain link; defendant could clearly see that he was attempting to stab both his sister and niece. Punton and Faber had to keep moving their hands around in order to avoid being stabbed and still hold onto the gate. At some point, Faber ran back to her home to call 911. Although still angry, defendant stopped stabbing at Punton's hands and left.

**DISCUSSION**

Defendant contends that the trial court abused its discretion in imposing consecutive 25-years-to-life sentences for his two assault with a deadly weapon convictions.[2]

"It is well established that a trial court has discretion to determine whether several sentences are to run concurrently or consecutively." (*People v. Bradford (*1976) 17 Cal.3d 8, 20; see also *People v. Rodriguez* (2005) 130 Cal.App.4th 1257, 1262.) This discretion stems from section 669, subdivision (a), which states: "When a person is convicted of two or more crimes, . . . the second or other subsequent judgment upon which sentence is ordered to be executed shall direct whether the terms of imprisonment or any of them to which he or she is sentenced shall run concurrently or consecutively." (*Rodriguez*, at p. 1262 [absent an express statutory provision to the contrary, § 669 provides that a trial court shall impose either concurrent or consecutive terms for multiple convictions].)

Where a defendant has been convicted of a number of serious felonies, each of which independently would subject the defendant to a life term under the habitual offender statute, the trial court has discretion to order that the life terms be served either concurrently or consecutively. (*People v. Jenkins* (1995) 10 Cal.4th 234, 254-256; *People v. Clancey* (2013) 56 Cal.4th 562, 579.) "In the absence of a clear showing of

---

[2] Defendant also contends the trial court erred when it reasoned that concurrent sentences would not provide any relief for defendant. We need not address this argument because, as will be discussed below, we find that the court properly imposed consecutive sentences because he was convicted of two separate crimes with different victims.

4

abuse, the trial court's discretion in this respect is not to be disturbed on appeal. [Citation.] Discretion is abused when the court exceeds the bounds of reason, all of the circumstances being considered." (*People v. Bradford*, *supra*, 17 Cal.3d at p. 20; *People v. Caesar* (2008) 167 Cal.App.4th 1050, 1059.)

Criteria affecting the decision to impose consecutive rather than concurrent sentences include facts relating to the crimes, including whether or not the crimes involved separate acts of violence or threats of violence. (Cal. Rules of Court, rule 4.425(a)(2)). Also, the presence of separate victim names in separate counts will justify a consecutive sentence. (*People v. Caesar*, *supra*, 167 Cal.App.4th at pp. 1060-1061, citing *People v. Calhoun* (2007) 40 Cal.4th 398, 408.)

In this case, defendant claims the court abused its discretion in imposing consecutive sentences for the two assaults because the court misunderstood the facts at trial. Defendant contends that contrary to the court's belief, "the evidence at trial established that the assaults were committed 'so closely in time and place as to indicate a single period of aberrant behavior.' (Cal. Rules of Court, rule 4.425(a)(3).)'"

At the sentencing hearing, the trial court advised the parties of its intent to impose consecutive indeterminate terms and attendant enhancement to count 2 for a total of 84 years. Defense counsel asked the court to consider concurrent sentences, and the prosecutor responded by arguing against concurrent sentences. She acknowledged that the court had discretion but urged that the existence of two separate victims warranted the imposition of consecutive terms. The trial court imposed consecutive sentences. The court explained, "The court is not going to run Counts 1 and 2 concurrent because, in

5

reality, it doesn't provide any relief for the defendant, but what it does do is to send a message that one victim will be considered and the other victim would not." The court then asked whether the facts of violence occurred at different times, asking counsel, "both victims were not behind that fence at the same time; is that correct?" Defense counsel advised the court that both victims were at the fence at the same time until one left. The prosecutor confirmed the court's recollection that one of the victims left the fence to call 911 then returned. The court then mentioned some confusion on its part about timing and then reiterated its initial reason for imposing consecutive sentences and rejecting defendant's request for concurrent sentences. The court stated: "So it's not that clear cut, and for the reason I've stated, I'm not going to exercise my discretion in that area."

Defendant claims that because the assaults were committed so closely in time and place, consecutive sentencing was an abuse of discretion. We disagree. The evidence in this case shows separate acts of violence against both defendant's sister and niece. Although defendant may have been more angry at his niece than his sister, both women described how they each had to keep moving their hands around to avoid being hurt by defendant's knife. The gate was a standard chain-link fence so defendant was able to see the two different victims. There is nothing in the record to indicate that defendant had only targeted Faber, and not Punton, his sister. Defendant stabbed at both women's hands; both Faber and Punton testified that they had to keep moving their hands around in order to avoid being stabbed. The evidence clearly supports that defendant intended to hurt both victims and took actions to carry out his separate intentions.

6

Therefore, because the evidence showed that defendant was convicted of two counts where there were two separate victims named in two separate counts, the trial court's imposition of consecutive sentence is not an abuse of discretion.  (*People v. Caesar*, *supra*, 167 Cal.App.4th at pp. 1060-1061, citing *People v. Calhoun*, *supra*, 40 Cal.4th at p. 408.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
                                                                                    J.


We concur:


McKINSTER _____
                    Acting P. J.


SLOUGH _____
                    J.


7