Filed 4/15/26  P. v. Garcia CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D087615 |
| Plaintiff and Respondent, | (Super. Ct. No. FWV19001231) |
| v. | |
| CHRISTOPHER JONATHAN GARCIA, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of San Bernardino County, Ingrid Adamson Uhler, Judge.  Affirmed.

Sylvia W. Beckham, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Arlene A. Sevidal, Assistant Attorney General, Chrisopher P. Beesley and Cobi S. Furdek, Deputy Attorneys General, for Plaintiff and Respondent.

MEMORANDUM OPINION

Christopher Jonathan Garcia appeals from his judgment of conviction and sentence, raising two sentencing claims. We review his claims for abuse of discretion (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 298; *People v. Caesar* (2008) 167 Cal.App.4th 1050, 1059) and affirm the judgment.

I.

*Background*

A jury convicted Garcia of the premeditated murder of Nathan Shamblin (Pen. Code,[1] §§ 187, 189; count 1); attempted premeditated murder of Anthony Lindbergh and Shonn Timothy Steward III (§§ 664, 187; counts 2 and 3); and shooting at an occupied vehicle (§ 246; count 4). The jury also found true a firearm enhancement (§ 12022.53, subds. (b), (c), (d)) for each count.

One night in April 2019, Garcia met a friend to sell him marijuana and then began arguing with Lawrence House, a passenger in his friend's car. House got out of the car and Garcia threw a beer bottle at him, cutting him and causing him to bleed. House got back in the car and left but returned a little while later with a group of friends in two cars, including Shamblin, Lindbergh, and Steward. After parking nearby, House and Shamblin got out of one car and stood in the middle of the street yelling towards Garcia's house. Lindbergh and Steward got out of the other car.

Shortly after, Garcia came from the back of the house, grabbed a gun and shot Lindbergh in the back as he tried to get away. After Lindbergh fell to the ground, Garcia walked over to him, stood over him, and, as he lay on the ground holding his arms up and palms out, Garcia continued to shoot

---

[1] Undesignated statutory references are to the Penal Code.

him, striking him a total of nine times. Lindbergh survived but with severe complications.

Garcia then fired multiple rounds at Steward who was running away, striking him in the back of the leg and groin area, and firing at and striking a nearby car. Steward managed to reach the side door of the car while House and Shamblin were in the car. Garcia continued shooting at the three of them as the car started to drive off. One of the bullets fired at the car hit Shamblin in the chest. He lost control of the car, crashed through a fence surrounding a park and died soon after he was hit.

Garcia then disappeared and evaded arrest for five years. Eventually, the U.S. Marshals located and arrested him in Mexico in 2024.

Following his jury trial and conviction, Garcia requested the count for shooting at an occupied vehicle run concurrently with the first degree murder count. He argued he had the same intent in committing both counts and they arose from the same circumstances, all close in time. The trial court decided to run the sentences consecutively, explaining they were "separate act[s] of violence" as there were "multiple shots towards that car, and there was more than one single person in that car, and it was by—probably just by dumb luck or whatever that the other individual did not get shot." Shooting at an occupied vehicle was "a separate crime because there were multiple people in that vehicle when the defendant continued to shoot at that vehicle."

In discussing the factors relating to the enhancements and its ultimate sentencing decision, the trial court observed that Lindbergh "was on the ground, completely defenseless, and [Garcia] kept shooting at him to the tune of—what? Nine times?" The court found it was "[i]ncredible that he survived" but his life "has been basically destroyed by [Garcia's] actions." Shamblin "was also fleeing at the time he got shot. So because they do involve separate

3

crimes of violence towards three individuals," the court said, "I'm not going to run it concurrent. I don't think he's entitled to that based on his own conduct."

The court also decided not to strike any firearm enhancements "because of the seriousness of the offenses, the impact it's had on all these people here in court and all the impact on the people that are not in court, and the fact that he shot at three unarmed individuals." Although acknowledging there was a "verbal altercation," the court noted "none of these individuals had any weapons, and he shot one man on his back, completely defenseless, over nine times—or nine times. One guy was fleeing and got shot in the rear. And then [Shamblin] was actually fleeing in a car, trying to get away from the situation, when he got shot and killed. So all of these acts were not in self-defense." The court further observed that the jury "found him guilty of first-degree and attempted first-degree, meaning that he did give it some thought as to what he was doing," and being 25 years old, "[h]e knows the difference between right and wrong, and he took that gun, and he shot it at three defenseless people and has completely destroyed all these people's lives that I have here sitting before me."

The trial court also found that Garcia "never accepted responsibility for his actions. He didn't stay. He didn't try to call 911. He didn't try to render aid. He got in a car driven by his girlfriend, went to Mexico. And it wasn't as if he just fled to Mexico. He did his damnedest to avoid being apprehended, according to the individual that came into court to testify: Changing his name, doing different social media accounts, whatever he could do to avoid apprehension." Finally, Garcia "committed an assault by means of force, great bodily injury, while incarcerated." Considering all these factors, the court "obviously believe[s] that [Garcia] poses a significant danger to the

4

community because he is an extremely violent individual who has no regard or remorse for others."

The trial court sentenced Garcia to 142 years to life. The sentence consisted of 25 years to life for the first degree murder of Shamblin plus 25 years to life for its attendant firearm enhancement; consecutive life terms for each of the attempted murder convictions of Lindbergh and Steward plus 25 years to life for their attendant firearm enhancements; and a consecutive lower term of three years for the shooting at an occupied vehicle conviction plus 25 years to life for its attendant firearm enhancement.

## II.

### *Discussion*

As noted, Garcia argues that the court erred when it imposed consecutive sentences for murder and shooting at an unoccupied vehicle and when it refused to dismiss the firearm enhancements. We find no abuse of discretion.

A.     *Consecutive Sentences*

The trial court has discretion to impose concurrent or consecutive sentences when a defendant is convicted of multiple crimes. (§669, subd. (a).) Factors affecting the decision to impose consecutive rather than concurrent sentences include whether the crimes: (1) and their objectives were "predominantly independent of each other;" (2) "involved separate acts of violence or threats of violence"; or (3) "were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." (California Rules of Court,[2] rule 4.425, subd. (a).) In making its decision, "[a]ny circumstances in

---

[2]     Undesignated rule references are to the California Rules of Court.

aggravation or mitigation . . . may be considered," although courts should avoid considering those facts simultaneously "used to impose the upper term," "used to otherwise enhance the defendant's sentence," or those facts that are also "an element of the crime." (*Id.*, at subd. (b).) Courts may use any criteria reasonably related to the sentencing decision being made, and the other factors listed in the Rules of Court are not exhaustive. (Rule 4.408.)

While sentencing courts may rely on many factors, "only a single aggravating circumstance is required to impose consecutive sentences." (*People v. Leon* (2010) 181 Cal.App.4th 452, 469 (*Leon*).) Courts can rely on the fact that there were multiple victims when deciding to impose consecutive sentences. (*People v. Calhoun* (2007) 40 Cal.4th 398, 408 ["There is no persuasive reason why the trial court should not be allowed to consider the fact of multiple victims as a basis for imposing either the upper term or a consecutive sentence, although it cannot do both."].)

Here, the trial court had discretion to impose consecutives sentences where Garcia fired numerous bullets at a vehicle holding more than one person. (See, e.g., *Leon, supra*, 181 Cal.App.4th at pp. 467–468 [a "trial court has discretion to impose consecutive sentences where, as here, a single act has resulted in crimes against multiple victims"].) It does not violate dual use of a fact (rule 4.425, subd. (b)), as Garcia claims, because his willingness to shoot at a vehicle occupied by multiple people (and therefore put multiple people's lives at risk) is a separate fact from his use of a firearm while committing the crimes. Finally, any error was harmless as the court discussed numerous aggravating circumstances and would have imposed consecutive sentences even if it had ignored the fact that there were multiple victims.

B.    *Firearm Enhancements*

6

In exercising discretion to dismiss sentence enhancements, the court must consider certain mitigating circumstances unless it "finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) Here, the court considered numerous factors, determined Garcia "poses a significant danger to the community" because he is "an extremely violent individual who has no regard or remorse for others," and declined to dismiss the firearm enhancements.

Relying on *People v. Gonzalez* (2024) 103 Cal.App.5th 215, Garcia argues the court erred because it considered his current, rather than his future, dangerousness. In *Gonzalez*, the appellate court explained that the public safety inquiry should be "forward-looking" and concluded that the trial court there erred when it focused solely on "whether the defendant *currently* poses a danger." (*Id*. at pp. 228–229.) There, however, the sentencing court explicitly misstated and misapplied the law. (*Id*. at p. 228 [the sentencing court stated it was required to determine whether the defendant 'currently at the time of sentencing' represents a danger to society].) Here, by contrast, the court did not misstate the law and did not indicate it was only considering Garcia's current dangerousness. Moreover, it was not required to discuss every factor it considered in declining to exercise its discretion under section 1385 (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637), and we must presume the trial court considered all relevant factors unless the record affirmatively demonstrates otherwise (*ibid*.). Although the court used present tense in certain sentences, that is not enough for us to conclude it applied an improper legal standard. (*Ross v. Superior Court of Sacramento County* (1977) 19 Cal.3d 899, 913 [" 'in the absence of any contrary evidence, we are entitled to presume that the trial court . . . properly followed established law' "].)

Garcia has not established that the trial court applied an incorrect legal standard or abused its discretion in declining to strike the firearm enhancements.

## III.
## DISPOSITION

We affirm the judgment.

DO, Acting P. J.

WE CONCUR:


BUCHANAN, J.


CASTILLO, J.

8