Filed 4/29/22  P. v. Bowden CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>NICHOLAS ANTWONE BOWDEN,<br><br>    Defendant and Appellant. | D078366<br><br><br>(Super. Ct. No. FVI19002515) |

APPEAL from a judgment of the Superior Court of San Bernardino, Tony Raphael, Judge.  Remanded for resentencing.

Martin Kassman, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal, Andrew S. Mestman, and Juliet W. Park, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant Nicholas Antwone Bowden led deputies on a late night, high-speed chase down an interstate highway and surface streets with four young children in the backseat and an unsecured firearm under the front passenger seat. A jury convicted him of four counts of felony child endangerment, willful evasion of a peace officer, and being a felon in possession of a firearm. At sentencing, the trial court imposed an upper term on the principal child endangerment count, and it ran the sentences on all five subordinate counts consecutively.

Bowden argues the court abused its discretion in imposing consecutive sentences on the four child endangerment convictions. He contends *concurrent* terms were required because those convictions all stemmed from the identical course of conduct during the high-speed chase. In addition, relying on the recent enactment of Senate Bill No. 567 (Senate Bill 567) (Stats. 2021, ch. 731, § 1.3), he challenges the court's imposition of a six year upper term on the principal child endangerment count. We reject the first contention but accept the second, disagreeing with the People's view that any error in failing to comply with the newly amended sentencing statute was harmless. Thus, we remand for resentencing but in all other respects affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Just after midnight on September 17, 2019, San Bernardino County Sheriff's Deputy Fernando Trujillo was driving north on Interstate 15 when he saw a Toyota Camry speeding ahead at 85 miles per hour. Trujillo signaled for the vehicle to pull over, and it initially slowed down before accelerating to 110 miles per hour. Weaving in and out of traffic without using its headlights or turn signals, the Camry nearly rear-ended two vehicles before veering off to exit the highway at La Mesa Road.

Deputy Michael Martinez joined the pursuit at La Mesa Road. Seeing the Camry drive at high speeds without headlights, Martinez activated his vehicle lights and siren to pull the car over, but it did not stop. The Camry proceeded at 90 miles per hour on surface streets, swerving between lanes and into oncoming traffic, barely avoiding collisions as Martinez followed in close pursuit. Eventually Martinez cornered the Camry in a paved lot behind a furniture store, prompting the driver to exit the vehicle and flee on foot.

Bowden, the driver, was arrested after a short chase. He did not have a license on him. In the backseat of the Camry he had just abandoned, deputies found an infant and three young children who were not in car seats or wearing seatbelts. There was also a woman and a dog in the vehicle. A search of the Camry revealed a loaded 9-millimeter semiautomatic pistol under the front passenger seat. The weapon only had a finger safety, which could have been jostled and dislodged during the high-speed chase.

During a custodial interrogation, Bowden told Deputy Francisco Demara that he had been trying to evade arrest on out-of-state felony warrants. He admitted the four young children were not in car seats as he drove up to 120 miles per hour. Conceding he had made a "very irresponsible dad move" and that "[i]t could have been way worse," Bowden explained that he was on the run because he was "smoking weed" and driving without a license.

The San Bernardino District Attorney charged Bowden with evading a peace officer with wanton disregard for safety (Veh. Code, § 2800.2, subd. (a), count 6), four counts of child endangerment likely to cause great bodily harm or death as to each of the four children in the car (Pen. Code,[1] § 273a, subd.

---

[1] Unless otherwise specified, further undesignated statutory references are to the Penal Code.

(a), counts 7–10), and being a felon in possession of a firearm (§ 29800, subd. (a)(1), count 11).[2] A jury ultimately convicted Bowden on each of these charged counts. The parties stipulated that Bowden had previously been convicted of a felony.

Bowden appeared for sentencing on July 10, 2020. Stating its intent to follow the probation department's recommended sentence of 11 years, four months, the court invited argument from the parties. Among other points raised, defense counsel urged the court to exercise its discretion to run the terms on counts 7, 8, 9, and 10 concurrently rather than consecutively, noting that the four felony child endangerment counts all stemmed from the same course of conduct.

The prosecutor disagreed, stating that the fact that multiple children were endangered was aggravating and that concurrent sentencing would ignore that Bowden placed *multiple* children at risk. Moreover, she urged the court to consider the ages and sizes of the children involved, noting that an infant outside a car seat faces greater risk from a high-speed chase than an older child.[3] Requesting briefing from both parties, the court continued the sentencing hearing to July 24.

---

[2] Because Bowden was acquitted on counts 1 through 5 as to events allegedly occurring on a different date, those counts are not discussed in this opinion.

[3] In their arguments before the trial court, both parties appeared to conflate the question of consecutive versus concurrent sentencing with multiple punishment. As the Supreme Court has explained, "section 654 is irrelevant to the question of whether multiple concurrent convictions are sentenced concurrently or consecutively." (*People v. Deloza* (1998) 18 Cal.4th 585, 594.) Both parties limit their focus on appeal to the propriety of consecutive sentencing alone, without addressing multiple punishment under section 654.

At the continued hearing, the court again expressed its intent to impose a sentence of 11 years and four months and invited argument on "the section 654 issue." Defense counsel acknowledged that section 654 did not apply because there were "multiple victims" but nonetheless stated the court had discretion whether to run the sentences consecutively or concurrently. He asked the court to not only run the child endangerment counts (counts 7, 8, 9, and 10) concurrently to each other, but also to run the term on the evasion count (count 6) concurrently with those counts, suggesting it too rested on the identical course of conduct.

In response, the prosecutor suggested that the felony child endangerment convictions could rest on events that were completed before the high-speed chase began, including having an unsecured loaded gun under the passenger seat or failing to secure the children with car seats or belts. Restating her view that Bowden "shouldn't get a discount for having more children in the car," the prosecutor suggested that consecutive sentencing was appropriate.

Once the matter was submitted, the court selected count 7, felony child endangerment as to the infant in the vehicle, as the principal count. It imposed the six year upper term on that count, reciting various factors (see Discussion, section B, *post*). As to the remaining counts, the court imposed consecutive sentences. It reasoned as to the convictions for evading deputies (count 6) and firearm possession (count 11), that the "crimes and their objectives were predominantly independent of each other, and . . . did involve separate acts of violence or threats of violence" justifying consecutive terms. The court likewise found consecutive sentences were appropriate on the remaining child endangerment counts (counts 8, 9, 10) because Bowden "showed a greater culpability by endangering multiple children." Citing

5

*People v. Calhoun* (2007) 40 Cal.4th 398 (*Calhoun*), the court reasoned it could consider the existence of multiple victims as a basis for imposing a consecutive sentence.

Thus, applying the consecutive sentencing rubric found in section 1170.1, the court imposed one-third the middle term on each of the subordinate counts (counts 6, 8, 9, 10, 11). Adding this to the six year upper term on count 7 resulted in a total sentence of 11 years and four months in state prison, with credit for time served.

## DISCUSSION

Bowden raised a single claim of sentencing error in his initial appellate briefs, arguing the trial court abused its discretion in imposing consecutive rather than concurrent sentences on the felony child endangerment convictions reflected in counts 7 through 10. He relied on the fact that all the offenses were committed pursuant to a single objective and course of conduct during a high-speed chase. We reject this contention, concluding no abuse of discretion occurred.

After appellate briefing was complete, the Governor signed into law Senate Bill 567, which amends section 1170, subdivision (b) to narrow the circumstances in which a sentencing court may impose an upper term. This court requested supplemental briefing from the parties "as to whether Bowden is entitled to the retroactive benefit of Senate Bill 567, and whether he seeks resentencing." Bowden submitted a supplemental brief asking for resentencing on count 7. He claims he is entitled to retroactive application of the ameliorative changes effected by Senate Bill 567 and that resentencing is required because none of the factors relied on by the trial court to impose the upper term remain valid.

6

The People concede retroactivity under *In re Estrada* (1965) 63 Cal.2d 740, 744−745 (*Estrada*). They nonetheless contend that remand for resentencing is unnecessary because any error in failing to submit the aggravating factors to the jury was harmless. For reasons we explain, we conclude that Bowden is indeed entitled to retroactive application of recent amendments to section 1170, subdivision (b), and reject the People's contention that resentencing is unnecessary.

A. *Consecutive Sentences on Counts 7, 8, 9, and 10*

The trial court sentenced Bowden to consecutive terms on each of the four felony child endangerment convictions, selecting the upper term on the principal count (count 7) and applying section 1170.1, subdivision (a) to run the terms on the remaining three counts (counts 8 through 10) consecutively. Bowden argues that the court abused its discretion in running the terms on these four counts consecutively where each rested on the same course of conduct and same objective during the high-speed chase. As he acknowledges, the decision to impose consecutive or concurrent sentencing is left to the trial court's sound discretion and will not be reversed unless, under the circumstances, the trial court's decision exceeds the bounds of reason. (*People v. Reneaux* (2020) 50 Cal.App.5th 852, 874.) On our record, no abuse of discretion occurred.

Rule 4.425(a) of the California Rules of Court[4] provides that a sentencing court may impose consecutive rather than concurrent sentences based on various facts relating to the *crimes*, "including whether or not: (1) The crimes and their objectives were predominantly independent of each other; (2) The crimes involved separate acts of violence or threats of violence;

---

[4] Further undesignated rule references are to the California Rules of Court.

or (3) The crimes were committed at different times or separate places, rather than being committed so closely in time and place as to indicate a single period of aberrant behavior." Rule 4.425(b) permits a court to further consider any aggravating or mitigating circumstances "in deciding whether to impose consecutive rather than concurrent sentences, except: (1) A fact used to impose the upper term; (2) A fact used to otherwise enhance the defendant's sentence in prison or county jail under section 1170(h); and (3) A fact that is an element of the crime may not be used to impose consecutive sentences." "The listing of factors in these rules for making discretionary sentencing decisions is not exhaustive and does not prohibit a trial judge from using additional criteria reasonably related to the decision being made," provided those criteria are stated on the record. (Rule 4.408(a).)

Construing the record in the context of the arguments made, the trial court imposed consecutive terms on the subordinate felony child endangerment convictions (counts 8 through 10) based on the jury's finding that multiple victims were harmed. In the court's view, Bowden "showed a greater culpability by endangering multiple children." Relying on *Calhoun, supra,* 40 Cal.4th 398, it reasoned that it could consider the existence of multiple victims as a basis for imposing *either* the upper term or a consecutive sentence, although it could not (and did not) do both.

As the trial court suggested, *Calhoun* is instructive, albeit not directly on point. In that case, the Supreme Court rejected a claim that it was improper for the sentencing court to consider the fact that defendant's high-speed drag racing harmed multiple victims in imposing an *upper term* on separate vehicular manslaughter counts that ran *concurrently*. (*Calhoun, supra,* 40 Cal.4th at p. 405.) As the court explained, the defendant's Sixth Amendment jury trial right was not implicated where he had been convicted

beyond a reasonable doubt of committing crimes against separate victims. (*Id.* at p. 408.) Moreover, where defendant's "single act of violence caused either the death or serious injury of four people," the court reasoned that "[t]he gravity of and his culpability for this offense is increased by the number of those he harmed." (*Ibid.*) A sentencing court could "consider the fact of multiple victims as a basis for imposing either the upper term or a consecutive sentence, although it cannot [under rule 4.425(b)(1)] do both." (*Calhoun,* at p. 408.)

This last aspect of *Calhoun* is helpful. Where, as here, a jury convicts a defendant in separate counts of engaging in a course of conduct that harmed separate victims, a sentencing court may consider the existence of multiple victims in imposing a consecutive sentence *or* an upper term, although it may not use the same factor to do both. Because the court imposed middle terms on counts 8, 9, and 10 and selected the upper term on count 7 for altogether different reasons (discussed *post*), it did not abuse its discretion in considering that multiple victims were harmed in running the terms on these four counts consecutively.

Bowden's attempt to cabin *Calhoun* as solely addressing upper term sentencing is unpersuasive. Post-*Calhoun* cases have made clear that a sentencing court "has discretion to impose consecutive sentences where, as here, a single act has resulted in crimes against multiple victims." (*People v. Leon* (2010) 181 Cal.App.4th 452, 468 (*Leon*); see *People v. Caesar* (2008) 167 Cal.App.4th 1050, 1061 [citing *Calhoun* to conclude that "the naming of separate victims in separate counts is a circumstance on which a trial court may properly rely to impose consecutive sentences"].) In short, there was no abuse of discretion in imposing consecutive terms on counts 7, 8, 9, and 10

9

based on the finding that Bowden harmed multiple victims through his conduct.[5]

B.    *Upper Term on Count 7:  Senate Bill 567*

Bowden was sentenced to a six-year upper term on count 7 (felony child endangerment as to infant Athena B. in violation of § 273a, subd. (a)). During his July 2020 sentencing hearing, the trial court articulated three aggravating circumstances justifying imposition of the upper term.  First, Bowden performed poorly on probation, both during previous probationary periods and while on probation at the time of the present offense.  Second, Bowden did not accept full responsibility for his conduct; in the court's view, his remarks about making an "irresponsible dad move" fell short given the level of danger he put his family in during the high-speed chase.  Third, the children in the car were each particularly vulnerable given their young age,

---

[5]    Elsewhere during sentencing, the court indicated that consecutive terms were appropriate because the "crimes and objectives were predominantly independent of each other, and . . . did involve separate acts of violence or threats of violence" justifying consecutive terms.  Bowden relies on this language to suggest that the court abused its discretion in running the terms on counts 7 through 10 consecutively.  But construed in context, this discussion related to the imposition of consecutive terms on the evading law enforcement and firearm possession counts in counts 6 and 11.  At sentencing, defense counsel sought concurrent sentencing on counts 7 through 10 *and count 6*, arguing that all *five* counts rested on the same high-speed chase.  The prosecutor responded that the child endangerment counts could rest on conduct that ended *before* the high-speed chase began, including the lack of car seats and the unsecured firearm.  It is in this context that the court's quoted language must be construed.  As the court explained, the "separate counts of felony evading and possession of a firearm by a felon . . . [were] divisible courses of conduct [that were] separate from each other, and from the felony child endangerment."  And even if the court considered erroneous factors, it made clear that any one factor would support consecutive sentencing, rendering any error harmless.  (See *Leon, supra,* 181 Cal.App.4th at pp. 468–469.)

close relationship with Bowden, and relative helplessness during the police pursuit.

At the time Bowden was sentenced, section 1170, former subdivision (b) largely left it to a sentencing court's "sound discretion" to select the appropriate term within a sentencing triad that "best serves the interests of justice." (§ 1170, former subd. (b), as amended by Stats. 2018, ch. 1001 (Assem. Bill No. 2942) § 1.) While Bowden's appeal was pending, the Legislature enacted Senate Bill 567, which amended section 1170, subdivision (b) to limit the situations in which an upper term could be imposed. (Stats. 2021, ch. 731, § 1.3.) Effective January 1, 2022, a court must "order imposition of a sentence not to exceed the middle term," except under narrow circumstances. (§ 1170, subd, (b)(1).) An upper term may be imposed "only when there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."[6] (§ 1170, at subd. (b)(2).)

---

[6]     Subdivision (b)(2) of section 1170 requires bifurcation of jury trials where aggravating factors are alleged: "Except where evidence supporting an aggravating circumstance is admissible to prove or defend against the charged offense or enhancement at trial, or it is otherwise authorized by law, upon request of a defendant, trial on the circumstances in aggravation alleged in the indictment or information shall be bifurcated from the trial of charges and enhancements. The jury shall not be informed of the bifurcated allegations until there has been a conviction of a felony offense." Although not relevant to this appeal, subdivision (b)(3) of section 1170 permits a sentencing court to "consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (*Ibid*.) New sentencing rules reflected in subdivision (b)(4) through (b)(7) of section 1170 likewise do not bear on this appeal.

Because the judgment in his case is not yet final, Bowden contends he is entitled under *Estrada, supra,* 63 Cal.2d at page 745, to the retroactive application of section 1170, subdivision (b) as amended. He notes that none of the factors relied on by the court at sentencing to impose the upper term were stipulated to or found true by the jury, and he seeks remand for resentencing. The People concede that the amended law applies retroactively to Bowden under *Estrada*, but nonetheless suggest remand is unnecessary.

We agree with the parties that Bowden is entitled to retroactive application of Senate Bill 567. When an amended statute has the effect of lessening punishment for an offense, "[i]t is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply"—that is, to all nonfinal judgments. (*Estrada, supra,* 63 Cal.2d at p. 745.) "The *Estrada* rule rests on an inference that, in the absence of contrary indications, a legislative body ordinarily intends for ameliorative changes to the criminal law to extend as broadly as possible, distinguishing only as necessary between sentences that are final and sentences that are not." (*People v. Conley* (2016) 63 Cal.4th 646, 657; see also *People v. Superior Court* (*Lara*) (2018) 4 Cal.5th 299, 308−309 [Proposition 57 applied retroactively where nothing rebutted the inference of retroactivity under *Estrada*].) By narrowing the permissible grounds on which a sentencing court can impose an upper term under section 1170, subdivision (b), Senate Bill 567 is ameliorative on some sentences. Because the Legislature gave no indication these amendments should apply prospectively only, under the *Estrada* rule we infer that the Legislature intended the new law to apply retroactively to all nonfinal convictions on appeal. (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1039 [remanding

for resentencing consistent with section 1170, subdivision *(b)(6)* as amended].)

While conceding retroactivity, the People suggest that "retroactivity does not necessarily require a remand to the superior court." Invoking the prejudice standard for Sixth Amendment violations at sentencing, they urge us to consider whether any error in failing to submit aggravating factors to the jury was harmless beyond a reasonable doubt. (See *People v. Sandoval* (2007) 41 Cal.4th 825, 838 (*Sandoval*); *People v. Wilson* (2008) 44 Cal.4th 758, 812–813.) In their view, any sentencing error under section 1170, subdivision (b) as amended is harmless, eliminating the need for remand, because all of the factors cited by the court to justify the upper term on count 7 "would have unquestionably been found true had they been put to the jury."

Even assuming the People are correct as to the applicable harmless error standard,[7] our record does not allow us to conclude the jury would have found true beyond a reasonable doubt *each* aggravating factor on which the court relied.[8] The prior version of the DSL did not require the prosecution to

---

[7] The People's argument appears to assume that the trial court's failure to apply the new procedures set forth in the amended statute would amount to a Sixth Amendment violation. We have no occasion to either endorse or contest that assumption.

[8] As the People correctly note, "even a single factor in aggravation is sufficient to support the imposition of an upper term sentence." This does not mean (nor do the People suggest) that an upper term may be affirmed without remand so long as the appellate court is satisfied beyond a reasonable doubt that "the jury would have found true *at least one* aggravating circumstance." (See *People v. Flores* (2022) 75 Cal.App.5th 495, 500–501, italics added.) Suffice it to say, we disagree with *Flores* to the extent it suggests that remand is unnecessary as long as the appellate court concludes one aggravating factor was proper, at least where the trial court does not *unambiguously* indicate that any one factor alone would suffice.

present evidence concerning circumstances in aggravation, and Bowden had neither reason nor opportunity to contest such evidence at trial. It is problematic in this context to rely on a pre-Senate Bill 567 sentencing record to reach a conclusion as to what the jury "unquestionably" would have found. "[A]lthough defendant did have an incentive and opportunity at the sentencing hearing to contest any aggravating circumstances mentioned in the probation report or in the prosecutor's statement in aggravation, that incentive and opportunity were not necessarily the same as they would have been had the aggravating circumstances been tried to a jury." (*Sandoval, supra,* 41 Cal.4th at p. 839.)[9]

Remand is especially necessary where an evidentiary conflict in the trial record bears on an aggravating circumstance considered at sentencing. Here, the trial court imposed an upper term in part based on Bowden's failure to accept responsibility for his conduct. It believed that his statement to police "along the lines of, I made a stupid dad move, [did] not reflect that the defendant accepted responsibility for his conduct." We cannot agree with the People that "[t]he jury would have unquestionably reached the same conclusion." Following his arrest, Bowden told police: "I just did a very irresponsible dad move." He acknowledged that he "made the wrong

---

(See, e.g., *People v. Scott* (1994) 9 Cal.4th 331, 355 [where a court relies on inapplicable aggravating factors, the reviewing court may not "reweigh valid factors bearing on the decision below"].)

[9] For instance, we cannot say the jury necessarily would have found that Bowden performed poorly on probation had it been presented with a fuller record. Bowden was placed on probation for 24 months in March 2018 following a misdemeanor conviction; 18 months into this period, he committed a felony. The record is silent whether Bowden otherwise violated the terms of his probation or whether a jury would have found beyond a reasonable doubt that a felony conviction in the last quarter of his probationary term amounted to poor performance on probation.

decision" and conceded "this is like a rightful conviction in a way." Although the court viewed these remarks to show insufficient remorse, a reasonable jury might have concluded otherwise.

## DISPOSITION

This matter is remanded for resentencing consistent with Penal Code section 1170, subdivision (b) as amended. Following resentencing, the court is directed to prepare an amended abstract of judgment and forward a certified copy to the Department of Corrections and Rehabilitation. In all other respects the judgment is affirmed.


DATO, J.

WE CONCUR:


AARON, Acting P. J.


DO, J.

15